| | |
|---|---|
| TIMOTHY LEE ANDERSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 11-1227-CV-W-GAF-P |
| ) | |
| CHRIS KOSTER, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS, AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner, Timothy Lee Anderson, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on November 30, 2011, seeking to challenge his 2010 conviction and sentence for statutory sodomy in the first degree, which was entered in the Circuit Court of Livingston County, Missouri.

Petitioner raises seven grounds for relief: (1) that there was insufficient evidence for his conviction; (2) that the trial court erred in allowing the victim's mother to testify to out-of-court disclosures made by her daughter; (3) that the trial court erred in barring the defendant's daughter, Samantha Mangiaracina, from testifying during his case in chief; (4) that the trial court erred in barring Mangiaracina from testifying as a rebuttal witness;[1] (5) that petitioner cannot be convicted

---

[1] Petitioner attempts to broaden grounds 3 and 4 to include a claim of ineffective assistance of counsel along with his claims of trial court error. He argues that counsel waited too long to endorse Mangiaracina as a witness, causing the trial court to bar her from testifying. The trial court found that defendant had committed a discovery violation by not disclosing Mangiaracina to the State earlier. However, as discussed *infra*, petitioner only raised a claim of trial court error on direct appeal, and he did not pursue a Mo. Sup. Ct. 29.15 motion attacking his sentence. Because petitioner did not argue ineffective assistance in the state courts, his claims now are barred from review by the doctrine of procedural default. Therefore, any grounds in the petition, or portions thereof, that claim ineffective assistance will be analyzed in the relevant section of this order discussing procedural default.

simply on the testimony of a child;[2] (6) that trial and appellate counsel were ineffective; and (7) that "the trial court was constitutionally ineffective." Respondent contends that all of petitioner's grounds for relief are either without merit or procedurally defaulted.

## SUMMARY OF FACTS

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> Viewing the evidence in the light most favorable to the verdict, the evidence established that in October of 2005 [petitioner] offered to take ten-year-old child, B.A.J., turkey hunting. He thereafter transported her to spend the night at his residence, located one block from B.A.J.'s home. B.A.J. had spent the night at [petitioner]'s home on prior occasions but always with [petitioner]'s daughter present. This time, B.A.J. and [petitioner] were alone. Although B.A.J. had slept on the couch during prior visits, [petitioner] insisted that she sleep in his bed on this occasion. B.A.J. testified that no reason for this was given, that she asked to sleep on the couch, but that she ultimately complied with [petitioner] and slept in the bed. The child and [petitioner] watched television together in [petitioner]'s bedroom; after which, he left the room, and B.A.J. fell asleep. Sometime later, B.A.J. was woken by [petitioner] sticking his fingers in her vagina. This lasted approximately five minutes, during which time the child remained silent. After he stopped, B.A.J. went back to sleep. When B.A.J. woke the following morning, it hurt her to urinate. The child asked [petitioner] to take her home. The turkey hunting excursion never occurred, as [petitioner] told B.A.J. that it was too late to go.
>
> B.A.J.'s mother testified that, when B.A.J. returned home that morning, she was uncharacteristically quiet. As time passed, she observed B.A.J.'s grades drop and her personality go from being a people person to withdrawn. For four years, B.A.J. kept this incident a secret. She attended family events where [petitioner] was present but was never alone with [petitioner]. She never again spent the night at [petitioner]'s house. B.A.J. worried that it might happen again.
>
> In 2009, B.A.J. disclosed the incident, first to her sister and a cousin, and then to her mother. Her mother testified at trial that B.A.J. did

---

[2]This ground appears to be an attack on the constitutional validity of the relevant Missouri sodomy statute, MO. REV. CODE § 566.062. Alternatively, it could be construed as merely duplicative of ground 1, in which petitioner challenges the sufficiency of the evidence.

-2-

> make a disclosure and that B.A.J. covered her face and broke into tears while disclosing. Mother testified that, after the disclosure, B.A.J. entered counseling. Her grades improved, and her personality went "back to normal."
>
> Deputy Michael Claypole, law enforcement officer with the Livingston County Sheriff's Office, contacted [petitioner] regarding the allegations. [Petitioner] was advised of his Miranda rights and agreed to talk to Deputy Claypole. Deputy Claypole testified that [petitioner] first denied knowing why Claypole wanted to talk to him but later admitted that he had been told that he "might have touched one of the girls." Deputy Claypole testified that prior to his inquiring into any specific events, [petitioner] volunteered that the allegations referred to a time during hunting season four years prior, that B.A.J. had slept in his bed, and that he had slept in a chair in the middle of the home.
>
> At trial, [petitioner] admitted that B.A.J. spent the night at his home for the purpose of turkey hunting the following morning and that she slept in his bed due to the couch being flea infested. Although [petitioner] claimed that, to the best of his knowledge, he had mentioned the flea infestation in his interview with Deputy Claypole, Deputy Claypole testified that [petitioner] never mentioned it. [Petitioner] denied sexual contact with B.A.J. He testified that, after the day B.A.J. spent the night, he occasionally saw her at family gatherings. He reported that on those occasions she called him "Uncle Tim," greeted him with a hug, and did not try to avoid him. A jury convicted [petitioner] of statutory sodomy in the first degree. [Petitioner] appeals.

State v. Anderson, 348 S.W.3d 840, 842-43 (Mo. App. W.D. 2011).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[3] Because the state

---

[3]"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be

-3-

court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **GROUND 1**

In his first ground for relief, petitioner challenges the sufficiency of the evidence. Review of this claim is extremely deferential to the state courts. Constitutionally sufficient evidence exists to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). On direct appeal, the Missouri Court of Appeals disposed of this claim as follows:

> In his first point on appeal, [petitioner] contends that the circuit court erred in overruling his motion for acquittal at the close of State's evidence, and again at the close of all evidence, because the only substantive evidence the State relied upon was the testimony of his accuser. [Petitioner] asserts that his accuser's testimony was so clouded with doubt that it was insufficient to create a submissible case to the jury. We disagree.
>
> [Petitioner] moved for acquittal at the close of [the] State's case and again at the close of all the evidence. We consider only the latter motion as [petitioner] waived any error of the former by offering evidence in his behalf. *State v. Johnson*, 447 S.W.2d 285, 286 (Mo. 1969). In reviewing the sufficiency of the evidence, we accept as true all evidence favorable to the State, and "[a]ll evidence and inferences to the contrary are disregarded." *State v. Crawford*, 68 S.W.3d 406, 407–408 (Mo. banc 2002). Our review is "limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Id.* at 408.
>
> We find the evidence in this case sufficient for a reasonable juror to

---

presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

find [petitioner] guilty of statutory sodomy in the first degree. The child victim, B.A.J., testified that in October of 2005, she spent the night at [petitioner]'s home for the purpose of turkey hunting the following morning. [Petitioner] confirmed her testimony. B.A.J. testified that she had spent the night at [petitioner]'s home on previous occasions but always with someone else present. [Petitioner] confirmed her testimony. B.A.J. claimed that [petitioner] asked her to sleep in his bed. [Petitioner] confirmed her testimony. B.A.J. testified that she and [petitioner] never went turkey hunting the following morning because she was told by [petitioner] that it was too late to go. [Petitioner] confirmed her testimony. B.A.J. testified that, after the overnight visit, she occasionally saw [petitioner] at family functions. [Petitioner] confirmed her testimony. B.A.J. testified that she never again spent the night at [petitioner]'s home. [Petitioner] never challenged this assertion. B.A.J. testified that [petitioner] stuck his fingers in her vagina. To this, [petitioner] disagreed.

[Petitioner] asks us to find B.A.J.'s testimony contradictory, inconsistent, unaccompanied by sufficient corroboration, and, therefore, insufficient to create a submissible case to the jury. We do not. "It is only in those cases where the evidence of the [accusing witness] is of a contradictory nature or, when applied to the admitted facts in the case, [the] testimony is not convincing and leaves the mind of the court clouded with doubts, that [the witness] must be corroborated or a judgment cannot be sustained." *State v. Baldwin*, 571 S.W.2d 236, 239 (Mo. banc 1978). Corroboration is not required with "inconsistencies not sufficient to make the testimony inherently self-destructive." *State v. Wright*, 998 S.W.2d 78, 81 (Mo. App. 1999). B.A.J.'s testimony is neither contradictory nor inconsistent. Most of her testimony in fact coincides with [petitioner]'s testimony. [Petitioner] suggests that B.A.J's testimony is contradictory and emits a "cloud of doubt" because she testified to being scared and worried that the abuse might happen again, contradicting his own testimony that the child did not act any different at family functions. B.A.J.'s testimony was not intrinsically contradictory or contrary to admitted facts in the case, but rather her testimony was contradictory with [petitioner]'s testimony, making it a matter of witness credibility.

"The reliability and credibility of a witness is for the jury to decide." *State v. Sumowski*, 794 S.W.2d 643, 645 (Mo. banc 1990). "Testimony of a single witness may be sufficient to constitute substantial evidence to make a submissible case." *Id.* "It is within the jury's province to believe all, some, or none of the witness' testimony in arriving at their verdict." *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). [Petitioner] avers that the child's testimony was the only

-5-

> substantive evidence relied upon. [Petitioner] forgets that he also testified, making his evidence available for consideration as well. *Johnson*, 447 S.W.2d at 287. A first-degree statutory sodomy conviction requires proof beyond a reasonable doubt that the defendant engaged in deviate sexual intercourse with a person less than fourteen years of age. § 566.062, RSMo Cum. Supp. 2005. "Deviate sexual intercourse" is defined as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person." § 566.010(1), RSMo Cum. Supp. 2005. We find the evidence sufficient for a jury to conclude beyond a reasonable doubt that [petitioner] was guilty of statutory sodomy in the first degree.

Anderson, 348 S.W.3d at 843-44.

The resolution of ground 1 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).[4]

Ground 1 is denied.[5]

## GROUNDS 2-4

---

[4] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

[5] To the extent ground 5 may be construed as making an identical claim to ground 1, ground 5 is denied.

Petitioner's second, third, and fourth grounds for relief concern trial court error. In ground 2, petitioner argues that the trial court should not have allowed the victim's mother to testify to out-of-court statements made by her daughter. In grounds 3 and 4, petitioner argues that the trial court should not have barred his daughter, Samantha Mangiaracina, from testifying as part of either his case in chief or as a rebuttal witness. On direct appeal, the Missouri Court of Appeals disposed of grounds 2-4 as follows:

[ground 2]

> In point two, [petitioner] asserts that the circuit court erred in allowing B.A.J.'s mother to testify to out of court disclosures made by B.A.J., resulting in improper bolstering of her testimony. "As [petitioner] did not include this issue in his motion for new trial, review of this point is discretionary and error is judged upon a manifest injustice standard." *State v. Horn*, 806 S.W.2d 155, 157 (Mo. App. 1991); Rule 29.11(d); Rule 30.20.
>
> Rule 30.20 authorizes this Court to review, in its discretion, "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted there from." Our Supreme Court has established a threshold review to determine if a court should exercise its discretion to entertain a Rule 30.20 review of a claimed plain error. First, we determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]' " *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc), *cert. denied*, 516 U.S. 1031, 116 S. Ct. 679, 133 L. Ed. 2d 527 (1995) (quoting Rule 30.20). If not, we should not exercise our discretion to conduct a Rule 30.20 plain error review. If, however, we conclude that we have passed this threshold, we may proceed to review the claim under a two-step process pursuant to Rule 30.20. In the first step, we decide whether plain error has, in fact, occurred. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc), *cert. denied*, —— U.S. ——, 130 S. Ct. 144, 175 L. Ed. 2d 93 (2009). "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious and clear." *Id.* (citations and internal quotation marks omitted). In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review. If, however, we find plain error, we must continue to the second step to consider whether or not a miscarriage

of justice or manifest injustice will occur if the error is left uncorrected. *Id.* We conclude [petitioner]'s claim does not facially establish substantial grounds for believing that he has been a victim of manifest injustice and we, therefore, exercise our discretion and decline a full plain error review.

B.A.J.'s mother testified that B.A.J. made a "disclosure," however, B.A.J.'s mother never detailed nor described the contents of the disclosure. B.A.J.'s mother testified that the disclosure came about while she was driving B.A.J. and B.A.J.'s sister to go shopping. She stated that she had a training book from work, and B.A.J.'s sister was "flipping through the book" while the mother drove. B.A.J.'s sister asked questions about the book, which contained information regarding sex offenders and victim statistics. The statistics said that one out of every four female children would be assaulted in their lifetime. The mother testified that, in the midst of talking about this, B.A.J. made a disclosure. The mother's additional testimony included her recollection of the child's behavior after returning from her overnight visit with [petitioner] and the child's behavior prior to, during, and after the disclosure.

"Improper bolstering occurs when the out of court statement of a witness is offered solely to be duplicative or corroborative of trial testimony." *State v. Ramsey*, 864 S.W.2d 320, 329 (Mo. banc 1993). The testimony of B.A.J.'s mother was not solely duplicative or corroborative of B.A.J.'s testimony and gave no details regarding B.A.J.'s disclosure that she had been sodomized by [petitioner]. [Petitioner]'s claimed error does not meet the threshold of facially establishing substantial grounds for manifest injustice. Point two is denied.

[ground 3]

In point three, [petitioner] contends that the circuit court erred in granting the State's motion to exclude a defense witness due to late endorsement. [Petitioner] concedes late endorsement but argues that allowing the witness would not have resulted in unfair surprise or tangible prejudice to the State. He contends that barring his witness was too drastic and, therefore, was prejudicial error. We disagree.

[Petitioner]'s trial occurred on July 19, 2010. [Petitioner] attempted to endorse his daughter, Samantha Mangiaracina, as a witness at approximately 12:46 p.m. on July 16, 2010, the Friday afternoon before the scheduled Monday hearing. This witness was not named in his March 26, 2010, answer to State's discovery request per Rule

-8-

25.05(A)(2), and no mention was made of this witness at a pre-trial hearing the morning of July 16, 2010. Prior to trial, the State orally moved to exclude the evidence per Rule 25.18, which allows for exclusion as a remedy for failure to comply with discovery rules. [Petitioner]'s justification for failing to timely call Mangiaracina as a witness was that he "assumed" the State was going to call another witness, whom he was going to use to provide the same testimony. Although he had an opportunity to subpoena the assumed witness, he did not. When he realized the assumed witness would not be called by the State, he attempted to endorse a different witness, Mangiaracina. In further defending the propriety of Mangiaracina as a witness, [petitioner] offered that the primary purpose of her testimony was for rebuttal anyway, thereby making endorsement unnecessary. The court sustained the State's motion to exclude the witness.

[Petitioner] testified on his own behalf during the trial. He said that, after the October 2005 overnight visit by B.A.J., he saw B.A.J. on occasion over the next four years. He said that, during those times, she greeted him as "Uncle Tim," that she gave him hugs and sat by him on the couch, and that it did not feel like she was running away from him or trying to avoid him. He stated that he "couldn't tell anything different from her" and that "she was just regular old B.A."

At the close of [petitioner]'s evidence, he renewed his request to call Mangiaracina as a "rebuttal witness." The State argued that [petitioner] had already testified to what Mangiaracina was to testify to and, therefore, her testimony would be improper bolstering. The court again overruled [petitioner]'s motion to endorse but allowed [petitioner] to make an offer of proof on the record. Mangiaracina's testimony in the offer of proof was that she saw [petitioner] and B.A.J. at family functions after October of 2005. She stated that B.A.J. called [petitioner] "Uncle Tim," gave [petitioner] hugs, sat by him on the couch, and did not appear to be running away or trying to avoid him. She indicated that she had pictures of the two sitting on the couch opening Christmas presents. She testified that both [petitioner] and B.A.J. acted "normal."

Discovery rules help eliminate surprise and allow both sides to become aware of trial witnesses and evidence. *State v. Martin*, 103 S.W.3d 255, 260 (Mo. App. 2003). Rule 25.05(A)(2) requires a defendant in discovery to disclose any witnesses he intends to call to testify. *Id.* \*847 Rule 25.1 n.1 offers sanctions for failure to comply with discovery rules, and exclusion of a witness is one such sanction. *Id.* The decision to exclude a witness under the rule is within the discretion of the circuit court. *Id.* "In determining whether the trial

-9-

court abused its discretion, an appellate court must first consider what prejudice the State would have suffered as a result of the discovery violation and second, whether the remedy resulted in fundamental unfairness to the defendant." *Id.* Exclusion may be proper when there is no reasonable justification for failure to disclose the witness. *Id.* at 261.

> n.1 Prior to December 23, 2003, the substance of Rule 25.18 was within Rule 25.16.

[Petitioner] gave no reasonable justification for late endorsement of the witness. Counsel stated, "It's simply because the rebuttal witness that I was planning on using is not being called." n.2 Nothing prevented [petitioner] from himself subpoenaing the State's expected witness. The witness he then attempted to call was his daughter, lending even less credibility to the contention that the witness could not have been timely identified. *State v. Watson*, 755 S.W.2d 644, 646 (Mo. App. 1988) and *State v. Harris*, 664 S.W.2d 677, 680–81 (Mo. App. 1984). Further, even if the State experienced no prejudice as a result of this untimely offer, [petitioner] has not demonstrated that fundamental unfairness resulted from the sanction.

> n.2 We assume counsel meant the witness whose testimony would rebut one of the State's propositions, as we understand the witness was to be called by the State in its case in chief.

[Petitioner] asserts that the primary purpose for Mangiaracina's testimony was for rebuttal—to rebut his accuser's assertions that she was scared or uncomfortable around [petitioner] after October, 2005. Yet, [petitioner] had already testified to substantially everything that Mangiaracina testified to in her offer of proof. This witness's testimony offered nothing new, nothing more, and certainly nothing with regard to the material issue in the case, the sodomy charge. This witness's testimony would have been cumulative, and its exclusion did not result in fundamental unfairness to [petitioner]. Point three is denied.

[ground 4]

In point four, [petitioner] contests the court's refusal to allow Mangiaracina's testimony for rebuttal. In overruling his request to enter Mangiaracina as a rebuttal witness, the court stated, "I'm still

-10-

going to overrule your motion to endorse." This suggests that the court viewed with skepticism [petitioner]'s description of Mangiaracina as a rebuttal witness after his attempt to endorse her in his case in chief. We also find [petitioner]'s characterization of Mangiaracina as a rebuttal witness disingenuous. He attempted to endorse Mangiaracina so that she could testify in his case in chief. Undoubtedly, he hoped to rebut the testimony offered by the prosecution but that does not make her a rebuttal witness. Here, after [petitioner]'s case in chief, the only rebuttal testimony offered by the State was the testimony of Officer Claypole and B.A.J. regarding the narrow issue of flea infestation. The State offered no other rebuttal, and, therefore, [petitioner] could have no rebuttal witnesses for any issue beyond flea infestation. Rule 27.02(k).

Nevertheless, on appeal [petitioner] contends that, because B.A.J.'s credibility was paramount to the case, [petitioner] should have been allowed to rebut B.A.J.'s testimony via his witness, Mangiaracina. Further, he contends that he was "forced to cross-examine B.A.J. as to her credibility in front of the jury to lay a foundation for Mangiaracina's impeachment testimony." When the circuit court subsequently refused to allow the jury to hear Mangiaracina, he claims he was unfairly prejudiced because "the nature of his cross-examination of the [child] came off as unwarranted and unnecessary badgering of a young girl." We find no error in the circuit court's decision.

Prior to [petitioner]'s offer of Mangiaracina as a rebuttal witness, [petitioner] had already testified to the same information to which he wanted Mangiaracina to testify. Therefore, cross-examination of the child was not only for the purpose of laying a foundation for Mangiaracina's impeachment testimony. If Mangiaracina's testimony was intended to rebut, then the same testimony by [petitioner] must have been likewise intended, making cross-examination of the child a necessity for laying the groundwork for [petitioner]'s testimony as well. As discussed above in point three, Mangiaracina had nothing to offer the jury that had not already been heard, and the exclusion of Mangiaracina's cumulative testimony did not result in fundamental unfairness to [petitioner]. Point four is denied.

We, therefore, conclude that the circuit court did not err and abuse its discretion in overruling [petitioner]'s motion for acquittal at the close of all the evidence because the evidence was sufficient for a jury to find [petitioner] guilty of sodomy in the first degree. Further, the circuit court did not err in allowing the testimony of the victim's mother. The court also committed no error in granting the State's

-11-

> motion to exclude [petitioner]'s witness due to late endorsement and
> in barring the same witness from testifying as a rebuttal witness. We
> affirm the circuit court's judgment.

Anderson, 348 S.W.3d at 845-48.

The resolution of grounds 2-4 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams, 529 U.S. at 412.

Grounds 2-4 are denied.

### **GROUNDS 5-7**

Grounds 5-7 are as follows: (5) that the testimony of a child is insufficient to sustain petitioner's conviction; (6) that trial and appellate counsel were ineffective in various ways; and (7) that "the trial court was constitutionally ineffective."

Respondent correctly maintains that grounds 5-7 are procedurally defaulted. In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims
> in state court pursuant to an independent and adequate procedural rule,
> federal habeas review of the claims is barred unless the prisoner can
> demonstrate cause for the default and actual prejudice as a result of
> the alleged violation of federal law, or demonstrate that failure to
> consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

-12-

A review of the record reveals that petitioner procedurally defaulted grounds 5-7 by not raising them on either direct appeal or through a properly filed Mo. Sup. Ct. Rule 29.15 motion. Petitioner did raise a ground of insufficient evidence on direct appeal; however, such a claim is distinct from ground 5, which appears to allege that under the relevant Missouri statute, the State must present at least some physical evidence to support a conviction. (See Petition, Doc. No. 1, pg. 12). Therefore, ground 5 is distinct from those grounds raised by petitioner in the state courts.

Further, petitioner never filed a Rule 29.15 motion in the state courts, which is the proper method in Missouri to exhaust post-conviction claims (*ie*, claims of ineffective assistance of counsel). He states in his petition that he "did not file [a] state [post-conviction relief motion] since [the] same judge would be reviewing and [it would] result in same opinion. Conflict of interest." (Doc. No. 1, pg. 5). Because petitioner failed to properly file a Rule 29.15 motion, ground 6 is protected defaulted.

Finally, ground 7 alleges various ways in which the trial court was "constitutionally ineffective," such as "chang[ing]" petitioner's sentence from "life [] to ten years," and forcing petitioner to be medicated during trial. (See Doc. No. 1, pg. 13). However, none of the arguments advanced under ground 7 were presented to the state courts. Therefore, ground 7 is procedurally defaulted.

Because grounds 5-7 have been procedurally defaulted, they may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. 722, 750 (1991). This Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

The United States Supreme Court has recently concluded that ineffective assistance or total lack of counsel in post-conviction proceedings, resulting in a failure to raise an ineffective assistance of trial counsel claim in the state courts, may constitute cause for a petitioner's procedural default. Martinez v. Ryan, ___ U.S. ___, 132 S. Ct. 1309, 1320 (2012). However, Martinez is inapposite because, here, petitioner himself is at fault for not filing a pro se Rule 29.15 motion in the first place. Indeed, petitioner concedes that he believed filing a Rule 29.15 motion was fruitless because the Circuit Court of Livingston County, Missouri, was prejudiced against him.[6]

Petitioner fails to show an external cause for his procedural default. Even though petitioner has failed to demonstrate cause (and, therefore, we do not consider prejudice) for his procedural default, the Court can still reach the merits of his claims if he can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence . . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995).

---

[6]Petitioner has partially changed his story regarding his procedural default of grounds 5-7 in his reply, claiming that he "did not file for state post-conviction proceedings because [1] he was certain that he would not receive a fair review in the State court . . . and [2] he failed to receive the proper forms to begin post-conviction proceedings in a timely manner." (Doc. No. 13, pp. 2-3). The Court finds petitioner's second justification unconvincing, as it was brought for the first time after respondent's response. Furthermore, petitioner nowhere provides any evidence that when he actually got the forms, he attempted to file a Rule 29.15 motion out-of-time in the state courts. Most likely, if petitioner had truly experienced an inability to file his Rule 29.15 motion, then the state courts would have excused his default. Third, petitioner nowhere gives dates or otherwise substantiates his claims as to why he could not meet the ninety-day deadline to file a motion for post-conviction relief after his case was affirmed on direct appeal.

-14-

Petitioner does not satisfy the Schlup gateway for presenting his defaulted claims. He emphasizes the fact that much of the evidence against him involved testimony by a child, whom he alleges made inconsistent statements at trial. However, such testimony does not make it "more likely than not that no reasonable juror would have convicted him." Id. Even if the testimony was somewhat suspect, reasonable jurors could well have found it credible enough to justify a conviction.

Petitioner has failed to show cause for his default of Grounds 5-7. He has not shown that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of grounds 5-7 is barred.

Grounds 5-7 are denied, and the case will be dismissed, with prejudice.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

-15-

                                                                                                                /s/ Gary A. Fenner
                                                                                                                GARY A. FENNER
                                                                                                                UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: May 23, 2012.